FOSTER ET AL. *v.* NORTH SIDE BANK.

[No. 12,335.   Filed February 19, 1926.   Rehearing denied May 12, 1926.   Transfer denied June 25, 1926.]

1. PLEADING.—*Demurrer properly sustained to paragraph of answer not pleading defense to complaint.*—In an action on a promissory note, a demurrer was properly sustained to a paragraph of answer which did not allege facts constituting a defense to the cause of action stated in the complaint, but demanded an accounting.   p. 72.

2. BILLS AND NOTES.—Evidence *held* to show that a bank cashier's note given for checks taken by him from the cash drawer of the bank was supported by a consideration.   p. 76.

3. BILLS AND NOTES.—*Evidence held insufficient to sustain defense of illegal consideration for bank cashier's note given for funds abstracted from the bank.*—Evidence *held* insufficient to sustain defense of illegal consideration for bank cashier's note consisting of alleged agreement by the bank not to prosecute the cashier and another for stealing from the bank.   p. 76.

4. BILLS AND NOTES.—*Evidence held insufficient to sustain defense of duress in execution of note.*—Evidence *held* insufficient

to sustain defense that bank cashier's note given to cover checks abstracted from the cash drawer was executed under duress. p. 77.

5. APPEAL.—*Error in striking out testimony held harmless where verdict should have been the same had such testimony remained in.*—In an action on a note, any error in striking out testimony was harmless where the verdict should have been the same had the testimony remained in. p. 78.

From the Vanderburgh Superior Court; *Edgar Durre,* Judge.

Action by the North Side Bank against Andrew W. Foster and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.* By the court in banc.

*Harold Taylor* and *Daniel H. Ortmeyer,* for appellants.

*John W. Spencer, James F. Ensle, John W. Spencer, Jr., Lucius C. Embree* and *Morton C. Embree,* for appellee.

ENLOE, P. J.—This was an action by the appellee against the appellants based upon a promissory note.

The complaint, which was in one paragraph, was answered by the appellants in five paragraphs, general denial, no consideration, illegal consideration, that the execution of said instrument was procured by duress, and a fifth paragraph which asked for an accounting. A demurrer was sustained to the fifth paragraph of answer, and replies in general denial to each of the other affirmative paragraphs closed the issues. A jury was called to hear the evidence and, at the close thereof, the court gave a peremptory instruction to return a verdict for appellee, for the principal and interest due on said note, plus such an amount as they should find from the evidence to be a reasonable attorney's fee. The errors assigned are: (a) Sustaining demurrer to said fifth paragraph of answer; and (b) overruling motion for a new trial.

There was no error in sustaining said demurrer to

said paragraph of so-called answer. It did not allege matter sufficient to bar the cause of action stated in the complaint, and, as a cross-complaint, it did not state facts sufficient to entitle appellants to an accounting as against the appellee.

At the close of all the evidence, the court gave the jury the following instruction, viz: "You are instructed by the court that no evidence has been adduced upon the trial of this cause which would warrant the jury in finding that either of the affirmative defenses pleaded by the defendants in this action have been established. * * * You are instructed therefore to find for the plaintiff, against both of the defendants, and to assess its damages * * * ."

It is one of the contentions of appellants that the evidence is of such a character that it was a question of fact for the jury, as to whether the execution of said note was obtained by duress, and that the court therefore erred in giving the above instruction.

The record discloses that appellant Foster became the cashier of appellee about February 1, 1917, and continued to act in that capacity until September 28, 1921, when he resigned. During this time, the Akin-Erskine Milling Company of Evansville was a customer of appellee; it was in a condition of doubtful solvency, if not insolvent. On July 2, 1921, the milling company had drawn two checks on the Union Trust Company of Chicago, Illinois, one for $8,500 and the other for $6,500, both payable to appellee bank, and for which said milling company had received credit on its account with appellee in the sum of $15,000. These checks were not forwarded to Chicago for collection, but remained in a cash drawer in appellee bank, and were carried on the books of said bank as "cash items." On Saturday, September 24, 1921, a bank examiner from the State Banking Department came to the bank to make an examina-

tion of its condition. The appellant, cashier, left the bank and went to the office of Akin-Erskine Milling Company, and while he was thus gone from the bank, he telephoned the teller "to go slowly," that he "expected to have something in his cage." While at the office of the milling company, he obtained two checks, each under date of September 24, 1921, but otherwise duplicates of said checks of July 2, 1921. When he returned to the bank, the examiner had not yet passed on the "cash items," and he went to the drawer where the old checks were, took them from the drawer, placed them in his pocket, and in lieu of said checks placed the two new checks in said drawer. The appellant says that he did this "for the purpose of fooling the bank examiner." The examiner, although he examined the "cages" and passed these checks on Saturday p. m., did not finish the examination of the bank. That evening, between the hours of 6:30 and 8:30, after the examiner had gone, appellant Foster, as he testifies, took out the last two above mentioned checks, aggregating $15,000, and in lieu thereof placed, as a cash item, a check for the sum of $15,000, drawn on the Mt. Vernon National Bank, Mt. Vernon, Indiana, and signed, "A. W. Foster, Trustee," which check was payable to the North Side State Bank. This check was thereafter, by said cashier, duly indorsed and forwarded through the usual channel for collection. He further testified that he wanted this last check to go out that night, so he wrote a letter and sent the check that night to the City National Bank of Evansville. He further testified that he signed said check as "trustee," to indicate that it was not a personal matter; that, in fact, he was not a "trustee" for anybody or anything; that at the time he drew this check, September 24, 1921, he did not have, and never had, any account, as "trustee," in the Mt. Vernon National Bank. On the following

Monday, September 26, appellant Foster talked by telephone with one of the officials of the Mt. Vernon Bank, and was told that said bank would not honor the said check drawn by him as "trustee" when the same arrived for payment, and, in this conversation, Foster told the official of the Mt. Vernon Bank, that he would send a cashier's check for $15,000 to cover it. On September 27, Foster drew a cashier's check, as cashier of the North Side Bank, in the sum of $15,000, payable to the order of the Mt. Vernon National Bank, and, as he testifies, sent this check, by mail, direct to said Mt. Vernon bank. This check was, by said bank, sent to the City National Bank of Evansville, Indiana, and, as appears by the indorsement on the back thereof, "paid through clearing house Sept. 29, 1921." The record discloses that the serial number of this check was 9000; that it was taken from a block of checks other than the block which was then being used; that Foster, at the time he wrote said check, made no record whatever of his having issued the same, or that the same was outstanding, nor did he give directions to any one else connected with the bank to make such entry; said appellant testified that it was held off the record for deception.

On Wednesday, September 28, 1921, Foster submitted to the president of appellee his resignation as cashier, but it was not then formally accepted, though he ceased thereafter to act in that capacity, and one Ayer was acting as cashier.

The appellant Foster further testified concerning this cashier's check, as his testimony is set forth in the appellants' brief herein, "The North Side Bank did not get anything for the $15,000 cashier's check which I drew and mailed to the Mt. Vernon National Bank. The bank got nothing for that cashier check." He further testified that he saw this cashier's check on September 29, 1921, at about noon: that Mr. Ayer, who was then

acting as cashier, had it and showed it to him and told him that he would have to take it up or make it good that day or he would turn it over to Mr. Kelsay, and he said, "You know Kelsay's mind," and "I asked him to please not take it up with Mr. Kelsay but to give me a chance."

Concerning the execution of the note in suit, Foster testified: That on the afternoon of the twenty-ninth, when he went home to get lunch, after the talk with Ayer, he took some blank notes with him; that after lunch, he went to see Endress at his store; that he wrote out the note in question at the store; that he was there about two hours; that the note was signed that afternoon; that after the note was signed, he took it, got in his automobile and drove home, where he remained the rest of the day; that the next morning, he went first to see Endress, and then to the bank, where he arrived about 9 o'clock; that when he arrived at the bank, he gave the note in question to Ayer, who was acting as cashier; that Kelsay was not at the bank when he gave the note to Ayer, but came in shortly afterwards; that from the time he took the blank note on the twenty-ninth, until he returned the signed note on the thirtieth, eighteen or twenty hours had elapsed, and that during that time, he had no conversation whatever with either Ayer or with Kelsay; on the twenty-ninth, when Ayer showed him the cashier's check, he said, "You know Kelsay's frame of mind," and I asked him not to tell Kelsay; that he then took the blank note, filled it out, had it signed, and returned it to the bank the next day; that after the note had been returned to the bank, Kelsay said he would not prosecute.

It also appears from the testimony of Foster that, on the morning of September 23, 1921, Kelsay, Foster, one Rechtin, and one Erskine were in conversation in the directors' room at the bank; that they were talking of

the affairs of the bank and, during the course of the conversation, Kelsay, addressing Erskine and Foster said, "If you do not get $25,000 in here by four o'clock this afternoon I will have you both arrested"; that Erskine then said to Kelsay, "We will get busy."

It would appear from the testimony of Foster that, following this conversation, they "got busy," as it appears that the same afternoon they turned over to the bank a check, designated as the "Iglehart check," in the sum of $25,000 and that, when they returned with the check to the bank, Kelsay, the president, had prepared a statement in writing to the effect that the matter had been adjusted and that there would be no prosecuting, and a copy thereof given to Foster.

The above testimony as to what occurred on September 23, was, on motion of appellee, stricken out, and of this action, appellants complain as being error.

Was there any evidence, competent to go to the jury, tending to establish either of the defenses pleaded?

As to the answer of no consideration, the testimony of appellant Foster conclusively establishes the fact that there was a valid consideration for the giving of the note in question. The bank had in its posses- sion on September 24, 1921, two checks aggregating $15,000, payable to its order and for which the Akin-Erskine Milling Company had received full face value. These checks were taken by Foster, under circumstances heretoforth set forth, put in his pocket, and by him kept. These checks so taken and kept furnished a valid consideration for the note in question. The defense of no consideration falls under the testimony of Foster himself.

As to the answer of "illegal consideration," the evidence likewise given on behalf of appellants, conclusively shows that no such agreement as that pleaded was ever made. The testimony of-

fered by appellants, the testimony of Foster himself, shows that as to the execution of the note in question, no conversation was had in which said subject was even mentioned prior to the execution of said note, and the statement of Kelsay, made after said note had been delivered to the bank, that he "would not now prosecute," certainly cannot be construed into, or given the force of, an agreement made prior to the execution of said note that if they would execute the note in question, the bank would not prosecute. There was no evidence sufficient to support a verdict for the appellants upon the issue tendered by this paragraph of answer.

The appellants next insist that said note is void because obtained by duress. In this connection, if we consider both the testimony which remained in the record and also that which was on motion of appellee stricken out, and also that offered by the appellants and excluded on objection of appellees, still the evidence falls far short of showing that the note in question was executed under duress. The only threat testified to as having been made by the president of the bank was made on September 23, and it was made, according to the testimony of Foster, in reference to an entirely different and independent transaction. No threat, other than the statement of Ayer that he would show the cashier's check to Kelsay and tell him about it, and which statement cannot be construed as a threat of prosecution, was made by any one, so far as the execution of the note in question was concerned. Foster knew he had not conducted the business of the bank as its cashier properly; he knew he had not made proper entries in the books of the bank; he knew that he had, without authority, taken and withdrawn from the bank checks belonging to it and carried on the books of the bank as "cash items" aggregating $15,000; and he knew that he had done these things for the "purpose of de-

ception," deceiving the bank examiner and also the president and other officers of the bank. A reading of all the testimony, both that given, that stricken out, and that excluded, impresses us that the concern or stress of mind under which Foster was laboring at the time he executed the note in suit and procured the same to be signed by Endress was the fear which he entertained as to what might be the consequences of his own wrongful conduct.

We need not pass upon the question as to whether the court erred in striking out the testimony heretofore referred to, or in excluding the offered evidence of which complaint is made, for, in either case, the error, if any, was harmless.

5.

The judgment is affirmed.